UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVAUNTI VICTORIA,<br><br>                                   Plaintiff,<br><br>v.<br><br>**CITY OF SAN DIEGO, DAVID DUNHOFF, individually and in his official capacity, et al.**<br><br>                                   Defendants. | Case No.:  17-cv-1837-AJB-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING CITY DEFENDANTS' MOTION TO DISMISS;**<br><br>**(2) GRANTING IN PART AND DENYING IN PART OFFICER DEFENDANTS' MOTION TO DISMISS; AND**<br><br>**(3) GRANTING PLAINTIFF LEAVE TO AMEND**<br><br>(Doc. Nos. 23, 24) |

The issue before the Court is whether Plaintiff Arvaunti Victoria ("Victoria") has adequately alleged that his traffic stop conducted by San Diego Police Officers was unwarranted and unreasonable. Victoria claims that he was pulled over under the guise of "loud pipes" when in actuality he alleges that he was stopped under a formal policy of the San Diego Police Department ("SDPD") to harass and arrest anyone perceived to be a

member of a motorcycle gang. (*See generally* Doc. No. 17.) In response, the City of San Diego and Shelley Zimmerman (collectively referred to as "City Defendants") and Defendants David Dunhoff, Sergeant J. Johnson, Timothy Coyle, Justin Montoya, Adam George, and David Wolff (collectively referred to as "Officer Defendants") filed two separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. Nos. 23, 24.) Victoria opposes both of the motions. (Doc. Nos. 27, 28.) On May 18, 2018, the Court held oral argument on both motions and then took the matters under submission. (Doc. No. 43.) As will be explained in greater detail below, the Court **GRANTS** City Defendants' motion to dismiss, **GRANTS IN PART AND DENIES IN PART** Officer Defendants' motion to dismiss, and **GRANTS** Victoria leave to amend.

## I. BACKGROUND

The following allegations are taken from Victoria's second amended complaint ("SAC") and are construed as true for the limited purpose of resolving this motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Victoria claims that SDPD proceeds under a policy to pursue any kind of action, legal or illegal, to suppress motorcycle clubs in San Diego, assuming that all motorcycle clubs are criminal gangs. (Doc. No. 17 ¶ 12.) During the time frame in which Victoria was purportedly illegally arrested, the SDPD was investigating the assault of a marine some distance from the Off Base Bar located at 9522 Miramar Road, San Diego. (*Id.* ¶ 17.) The police did not have a description of the suspects, but according to the police report, the marine had been told to leave the bar by unknown members of a motorcycle gang. (*Id.*)

On September 9, 2016, Victoria arrived on a motorcycle to the Off Base Bar. (*Id.* ¶ 18.) That particular night was "motorcycle night" where the bar encouraged motorcycle riders and motorcycle clubs to show up. (*Id.*) When Victoria parked, the officers observing the bar, saw him take a vest with the emblem of the motorcycle club named the "Chosen Few" out of his saddle bags, put it on, and then enter the bar. (*Id.*) Subsequently, Victoria left the bar, placed the vest back into his saddlebags, and drove away. (*Id.*)

Victoria was then stopped in the vicinity of Miramar and Kearney Mesa Roads. (*Id.*

¶ 16.) The officers initially told Victoria that he was stopped for loud motorcycle pipes. (*Id.* ¶ 19.) After he was stopped, the officers also stated that they had stopped him because his motorcycle did not have a license plate. (*Id.*) Victoria argues that both of these reasons were concocted as the officers did not have a decibel meter or any type of device to measure the sound of his motorcycle exhaust pipes. (*Id.*) Moreover, Victoria presented to the officers the appropriate DMV paperwork indicating that the motorcycle had just recently been purchased and the license plates were arriving soon. (*Id.* ¶¶ 16, 19.)

During Victoria's stop, a total of five officers appeared. (*Id.* ¶ 20.) After one or more officers confirmed that Victoria had no citations, one of the officers informed Victoria that they needed to search his saddlebags. (*Id.*) Victoria objected to the search, but after "stern" comments from an officer stating that they could do this "the easy way or the hard way," putting Victoria in fear of his life, Victoria raised his hands slowly and told the officers that the key to the saddlebags was in his pocket. (*Id.*) During the search of the saddlebags, Victoria's "Chosen Few" vest was found. (*Id.* ¶ 21.)

Subsequently, Victoria was arrested and charged with having illegal metal knuckles due to the rings he was wearing along with a gang enhancement. (*Id.*) Victoria's cell phone was then taken and officers demanded that Victoria provide a password for the phone or they would tow his motorcycle. (*Id.* ¶ 22.) Plaintiff provided the password for the phone, but the pattern did not work thus Plaintiff's motorcycle was towed. (*Id.*) After Victoria was arrested and booked, the officer who transported Victoria to jail let Victoria unlock the phone. (*Id.*) Victoria's phone was then seized. (*Id.*)

Thereafter, a search warrant for Victoria's cell phone was procured. (*Id.* ¶¶ 25, 26.) Victoria asserts that this warrant is extremely broad. (*Id.* ¶ 26.) For instance, the warrant sought all financial information, all social media applications, identification and settings, data, address, book/contacts, social network posts/updates/tags, stored passwords, photographs, and Wi-Fi network tables. (*Id.* ¶ 28.) In sum, Victoria argues that the warrant is invalid as it did not contain a statement of probable cause and the affidavit would not have been able to establish probable cause as Victoria was stopped on a mechanical

violation and had no criminal record. (*Id*. ¶¶ 30–32.)

After Victoria's arrest, he was not charged, but he paid $8,000.00 for bail as a result of the incident. (*Id*. ¶ 35.) Further, Victoria claims that due to the initial stop and the allegations surrounding his arrest, he has been suffering from mental and emotional distress. (*Id*.) Thus, Victoria alleges violations of (1) his Fourth Amendment rights against all individual Defendants—42 U.S.C. § 1983; (2) false arrest against all individual Defendants—42 U.S.C. § 1983; (3) illegal search against all individual Defendants—42 U.S.C. § 1983; (4) deliberate indifference against all Defendants—42 U.S.C. § 1983; (5) deliberate indifference in regards to the purported custom and policies of the SDPD—42 U.S.C. § 1983;   (6) violation of the California Constitution Article I § 13 against Defendants Coyle, Dunhoff, Johnson, and George; (7) violation of California Civil Code § 52.1 against all Defendants; (8) injunctive relief pursuant to the Bane Act against all Defendants; and (9) intentional infliction of emotional distress ("IIED") against all individual police officer Defendants. (*See generally* Doc. No. 17.)

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal*., *Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.

519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III. DISCUSSION

### A. Defendants' Request for Judicial Notice

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Both motions to dismiss request judicial notice of the same six exhibits: (1) *People of the State of California v. Chosen Few, M.C., et al.* ("Chosen Few Case"); (2) "Judgment After Default Against 9 Defendants" filed in the Chosen Few Case; (3) the declaration of Jenal filed in the Chosen Few Case; (4) the Warrant and affidavit in support of Victoria/Plaintiff; (5) the police report at issue in this matter; and (6) a document titled "Motorcycle Clubs Identified by NCIS Marine Corps West Field Office As Criminal Organizations or Clubs Advocating the Participation in Criminal Activities As of 01APR16." (*See generally* Doc. Nos. 23-2; 24-2.)

Victoria filed two separate objections to the requests on January 19 and 29, 2018.[1] (Doc. Nos. 26, 32.) As the objections mimic each other, the Court will refer to ECF document number 26 for purposes of this Order. Victoria's objections to each exhibit are as follows.

---

[1] The Court notes that its Civil Case Procedures explicitly state that separate objections are not allowed. (Civ. Case. Proc. IIA.) However, for purposes of this Order, the Court will consider Victoria's objections. Any further violations of this Court's Civil Case Procedures will not be entertained.

1) Exhibit 1 – Victoria argues that the Chosen Few case cannot be incorporated by reference, is a nuisance complaint against people Victoria has not met, and the document is inadmissible hearsay. (Doc. No. 26 at 5.) Moreover, Victoria contends that the document is prejudicial and contains no probative value. (*Id*. at 5–6.)

2) Exhibit 2 – Victoria asserts that this default judgment concerns events completely unrelated to the allegations of this case and is not referenced in the SAC. (*Id*. at 6–7.)

3) Exhibit 3 – Victoria argues that the declaration is not referenced in the SAC. (*Id*. at 8.) Moreover, the declaration raises relevance, hearsay, prejudice, improper expert opinion, and improper character evidence objections. (*Id*.)

4) Exhibit 4 – As to the warrant affidavit and search warrant for Victoria's phone, Victoria concedes that portions of these documents are incorporated by reference. (*Id*. at 8–9.) However, Victoria objects to judicial notice of any fact related to said document beyond its existence, the filing date, and the date of the stop and arrest at issue etc. (*Id*.)

5) Exhibit 5 – Similarly, as to the police report, Victoria states that portions of the document may be incorporated by reference. (*Id*. at 10–11.) However, he asserts that any facts subject to dispute are not judicially noticeable facts. (*Id*.)

6) Exhibit 6 – Victoria asserts that the NCIS bulletin is an opinion formed by some officers and therefore does not reflect an adjudicative fact. (*Id*. at 11–12.) Moreover, the document is not referenced in the SAC. (*Id*.)

As to Exhibits 1–3, as they are state court documents and thus public records, judicial notice is appropriate. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence."); *see also Molus v. Swan*, No. 05cv452-MMA (WMc), 2009 WL 160937, at *2 (S.D. Cal. Jan. 22, 2009) ("Courts may take judicial notice of their own records."). However, the Court may not take judicial notice of findings of facts from another case. *See Walker v. Woodford,* 454 F. Supp.

2d 1007, 1022 (S.D. Cal. 2006). Accordingly, the Court **GRANTS** Defendants' request for judicial notice of Exhibits 1–3 for this limited purpose.

As to the arrest warrant, as Victoria disputes the veracity of the account contained within the document, the Court will only take judicial notice of the reasonably undisputed facts such as the existence of the warrant, its filing date, and the date of the stop and arrest at issue, among other things. Thus, for this limited purpose, judicial notice of Exhibit 4 is **GRANTED**. *See Bunkley v. Verber*, No. 17-cv-05797-WHO, 2018 WL 1242168, at *2 (N.D. Cal. Mar. 9, 2018) (explaining that the court could take judicial notice of the arrest warrant as it was not subject to reasonable dispute); *see also Ferguson v. United States*, No. 15cv1253 JM (DHB), 2016 WL 4793180, at *2 (S.D. Cal. Sept. 14, 2016) (taking judicial notice of an arrest warrant because it was a "matter[] of public record, and the parties [did] not dispute [its] authenticity.").

In regards to the police report, Victoria does not dispute that the report itself was referenced in the complaint. Instead he argues that the Court should not take judicial notice of the disputed facts contained therein. (Doc. No. 26 at 10.) The Court agrees. Despite the fact that some records of a state agency may be proper subjects of judicial notice, a district court "may not take judicial notice of documents filed with an administrative agency to prove the truth of the contents of the documents." *Zuccaro v. Martinez Unified Sch. Dist.*, No. 16-cv-02709-EDL, 2016 WL 10807692, at *5 (N.D. Cal. Sept. 27, 2016); *see also Knighten v. City of Anderson*, No. 2:15-cv-01751-TLN-CMK, 2016 WL 1268114, at *5 n.3 (E.D. Cal. Mar. 31, 2016) (refusing to take judicial notice of police reports and facts contained in the report because they were subject to reasonable dispute between the parties). Thus, the Court **GRANTS** only limited judicial notice of Exhibit 5.

Finally, the Court finds judicial notice of Exhibit 6 unwarranted. Exhibit 6 is a Naval Criminal Investigative Service document issued on May 16, 2016. (Doc. No. 23-8.) The document illustrates that the NCIS Marine Corps West Field Office identified the "Chosen Few" as a motorcycle club that is "closely aligned with criminal organizations[.]" (*Id.* at 2.) Despite Victoria referencing the Chosen Few in his complaint, the Court does not find

7

this document relevant, capable of accurate determination, or not subject to reasonable dispute. This document is simply a report generated by unknown members of the Navy Corps based on unknown factors. Thus, the Court **DENIES** Defendants' request for judicial notice of Exhibit 6. *See U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1382–83 (C.D. Cal. 2014) (declining to take judicial notice of the policy statements of private insurance companies as the documents were not information generally known, not capable of accurate determination, and were "irrelevant" for purposes of deciding the motion).

In sum, the Court **GRANTS IN PART AND DENIES IN PART** both City Defendants and Officer Defendants' requests for judicial notice of the same six documents. (Doc. Nos. 23-2, 24-2.)

B. City Defendants' Motion to Dismiss

City Defendants assert that Victoria's allegations are nothing more than legal conclusions and should be dismissed pursuant to Federal Rule of Civil Procedure 8. (Doc. No. 23-1 at 18–19.) Victoria opposes the motion in its entirety. (*See generally* Doc. No. 27.)

i. ***The First through Fifth Causes of Action Against Zimmerman in her Individual Capacity Fail***

City Defendants argue that Victoria has failed to assert any claims against Zimmerman in her "individual capacity" as he has failed to specify any individual conduct by Zimmerman. (Doc. No. 23-1 at 22–23.) Instead, City Defendants contend that Zimmerman is lumped in with the other Defendants. (*Id.*) Thus, according to City Defendants, dismissal is proper. (*Id.*) In opposition, Victoria broadly concludes that he has alleged that Zimmerman is the final policy maker and that she approved of the police harassment of motorcycle clubs both in her official and personal capacity. (Doc. No. 27 at 20–22.)

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."

8

*Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted). Specifically, § 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009).

Liability under § 1983 arises only upon a showing of personal participation by the defendant. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). In *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996), the Ninth Circuit defined the contours of individual liability further when it stated that a plaintiff could not hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct. Thus, personal participation is a predicate for § 1983 liability. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

In addition to this, "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Id*. This requisite causal connection may be established through direct personal participation in the deprivation, but also can be established by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id*. at 743–44.

Presently, Victoria's SAC alleges that Zimmerman is the final policy and decision maker of the police department. (Doc. No. 17 ¶ 12.) Moreover, he alleges that Zimmerman approves of the police harassment of motorcycle riders pursuant to an illegal policy to suppress motorcycle clubs. (*Id*.) The complaint then pleads that Zimmerman was deliberately indifferent to Victoria's rights to be "free from arbitrary detainment and arrest without probable cause" and that his Fourth Amendment rights were "trample[d]" by Zimmerman through the SDPD's customs, policies, and inadequate training. (*Id*. ¶¶ 50, 53.)

The Court finds the foregoing assertions too conclusory and vague to withstand City Defendants' motion to dismiss. Other than generally concluding that Zimmerman approved of the "Gang Task Force Policy," Victoria does not plead any other personal acts made by Zimmerman relating either to her duties and responsibilities as the Chief of Police that connect her to the purported constitutional violations at issue. *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986); *see also Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (explaining that vague and conclusory allegations of an officer's involvement in civil rights violations are inadequate). In fact, the complaint is completely devoid of allegations that demonstrate specific, affirmative actions taken by Zimmerman, her participation in another's affirmative action, or a failure to perform. *See Johnson*, 588 F.2d at 743.

Accordingly, the first through fifth causes of action against Zimmerman in her individual capacity are insufficient and thus **DISMISSED**. *See Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (explaining that a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation.") (citation omitted); *see also Ortez v. Washington Cty., State of Or.*, 88 F.3d 804, 810–11 (9th Cir. 1996) ("To survive the motion to dismiss, [a plaintiff] is required to allege overt acts with some degree of particularity such that his claim is set forth clearly enough to give defendants fair notice of the type of claim being pursued.").

  *ii.*  ***The First through Fifth Causes of Action Against Zimmerman in her Official Capacity Fail***

City Defendants also argue that the above mentioned claims should be dismissed as to Zimmerman in her official capacity as a suit against the entity to which Zimmerman is an agent is redundant of a suit against Zimmerman in her official capacity. (Doc. No. 23-1 at 23–24.) The Court agrees.

"An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Enriquez v. City of Fresno*, No. CV F 10-0581 AWI DLB, 2010 WL 2490969, at *5 (E.D. Cal. June 16, 2010) (citation omitted); *see also Luke v. Abbott*, 954 F. Supp.

10

202, 204 (C.D. Cal. 1997) (noting that "[i]f both [the official capacity officer and the local government entity] are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant.").

Consequently, the first through fifth causes of action against Zimmerman in her official capacity are **DISMISSED**.

### iii. *The First Through Fifth Causes of Action Against the City*

City Defendants also allege that the first through fifth causes of action fail as to the City as Victoria's *Monell* claims fail as a matter of law. (Doc. No. 23-1 at 24–27.) In opposition, Victoria delineates in his brief the pleading standard for *Monell* claims and then argues that his "complaint clears [the Monell] bar on all counts." (Doc. No. 27 at 13–17.)

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* In addition "a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Pitts v. Cty. of Kern*, 17 Cal. 4th 340, 349 (1998).

Instead, a municipality is held liable only when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691. This "official municipal policy" need not be expressly adopted, "[i]t is sufficient that the constitutional violation occurred pursuant to a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citation and internal quotation marks omitted). A policy can also be one of action or inaction, such as a failure to train employees when such omissions amount to the government's policy. *See Long v. Cty of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006) ("[A] county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference[.]").

Thus, to establish a § 1983 claim for municipal liability, Victoria must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation and internal quotation marks omitted).

Victoria pleads one main theory with regard to a policy, practice, or custom: that the City of San Diego has a "formal or de facto policy to harass and suppress motorcycle clubs it considered to be gangs in the City of San Diego and exhibited deliberate indifference to the conduct of its police department's officers who carried out the policies . . . ." (Doc. No. 17 ¶ 10.) Additionally, Victoria asserts that Chief Zimmerman approved his arrest pursuant to her department's "policy of pursuing any kind of action, legal or illegal, to suppress motorcycle clubs in the City of San Diego as well as under the wrongful concept that all motorcycle clubs are criminal gangs." (*Id.* ¶ 12.)

Based on the foregoing, the Court finds that Victoria has sufficiently alleged a policy, practice, or custom. *See Butler v. Los Angeles Cty.*, 617 F. Supp. 2d 994, 1000 (C.D. Cal. 2008) ("At the pleading level . . . In this circuit, a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.") (internal quotation marks omitted) (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).

As to the rest of the foregoing elements, Victoria's SAC is deficient. First, the Court finds that Victoria has failed to allege that the Policy amounted to deliberate indifference. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

Victoria asserts that Defendants' plans and actions was caused by "deliberate indifference by final decision-makers of the San Diego Police Department and the City of

San Diego" and was ratified by final decision-makers such as Zimmerman. (Doc. No. 17 ¶ 53.) Further, Victoria pleads that each of the Defendants were "deliberately indifferent to [his] rights to be free from arbitrary detainment and arrest without probable cause or reasonable suspicion[.]" (*Id.* ¶ 50.) The Court finds that these assertions do not provide sufficient factual allegations to support a claim of deliberate indifference. Instead, the allegations are simply vague legal conclusions that should be dismissed. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 931–32 (E.D. Cal. 2015) (finding that the plaintiffs had adequately alleged deliberate indifference based on the contentions that defendants failed to properly investigate and evaluate complaints of excessive force, ignored unlawful police activity, and that defendants tolerated police officers' "code of silence," along with the filing of false police reports).

For the same reasons, Victoria's ratification allegations also fail. To show ratification, a plaintiff must assert that the "authorized policymakers approve a subordinate's decision and the basis for it[.]" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation. *See Garrison v. Burke*, 165 F.3d 565, 572 & n.6 (7th Cir. 1999) (holding that the municipality was not liable under § 1983, because it had no knowledge of the alleged constitutional violations).

Here, the SAC does not demonstrate that the City authorized or approved a subordinate's decision. Instead, Victoria generally pleads that Zimmerman was the final policy maker that approved of the police policy to harass motorcycle gangs, (Doc. No. 17 ¶ 12), and that the Officer Defendants were following a formal policy of the SDPD when they pulled Victoria over, (*Id.* ¶ 19). These broad and nonspecific assertions do not provide the necessary factual allegations to state a valid claim for ratification. *See Lytle v. Carl*, 382 F.3d 978, 987–88 (9th Cir. 2004).

Additionally, Victoria's failure to train allegations are insufficient. To allege § 1983 municipal liability based on a failure to train, Victoria must claim that (1) the "existing training program is inadequate" in relation to the tasks the particular officers must perform; (2) the failure to train amounts to "deliberate indifference to the rights of persons with whom the police come into contact"; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right. *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (citation omitted). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Here, Victoria's fifth cause of action simply and broadly argues that the deliberate indifference of the officers was caused by their "inadequate training, supervision, and/or discipline of officers by the [SDPD] and the City of San Diego[.]" (Doc. No. 17 ¶ 53.) It is clear that this simple allegation is insufficient. *See Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) ("Under this standard, [the plaintiff] must allege facts to show that [the defendant] disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.") (citation and internal quotation marks omitted); *see also Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (finding allegations of inadequate training and hiring insufficient as the complaint did not identify what the training and hiring practices were, how they were deficient, or how the training practices caused the plaintiff harm); *Bini v. City of Vancouver*, 218 F. Supp. 3d 1196, 1203 (W.D. Wa. 2016) ("Absent allegations of specific shortcomings in the training . . . or facts that might place the City on notice that constitutional deprivations were likely [to] occur, Plaintiff [cannot] adequately [plead] a § 1983 claim . . . for failure to train.").

Accordingly, the first through fifth causes of action against the City are **DISMISSED**.

///

### iv.    The Seventh and Eighth Causes of Action

City Defendants allege that Victoria's Bane Act claims should be dismissed because Victoria has failed to allege threats, intimidation, or coercion separate and independent from the wrongful conduct that purportedly constitutes his constitutional rights violation. (Doc. No. 23-1 at 37.) Victoria asserts that his SAC very plainly alleges both constitutional violations and coercion. (Doc. No. 27 at 25–26.)

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation and internal quotation marks omitted). The essence of a Bane Act claim is that the defendant, by improper means, "tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007).  Courts have generally required that the Bane Act show coercion "independent from the coercion inherent in [the constitutional violation] itself." *Shoyoye v. Cty of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012). Further, the Bane Act authorizes individual civil actions for damages and injunctive relief. *See* Cal. Civ. Code § 52.1(a).

The Court notes that "[t]he Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of much debate and confusion." *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017 (citation and internal quotation marks omitted); *see also K.T. v. Pittsburg Unified Sch. Dist.*, 219 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("Courts deciding whether the 'threat, intimidation or coercion' must be distinct from the alleged underlying constitutional or statutory violation have come out all over the map.").

*Compare Page v. Cty. of Madera*, No. 1:17-CV-00849-DAD-EPG, 2017 WL 5998227, at *4 (E.D. Cal. Dec. 4, 2017) ("Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials knowingly deprived

them of a constitutional right or protection though acts that are inherently coercive and threatening, such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations.") (internal quotation marks omitted), *with Razon v. Cty. of Santa Clara*, No. 17-CV-00869-LHK, 2018 WL 405010, at *7 (N.D. Cal. Jan. 12, 2018) ("[A] plaintiff alleging deliberate indifference to serious medical needs must also allege coercion separate from the coercion inherent in that deliberate indifference in order to state a Bane Act claim.") (citation and internal quotation marks omitted).

The *Cornell* court explicitly sought to clear up the confusion among district courts over whether Bane Act claims require a separate allegation of coercion apart from the underlying violation. 17 Cal. App. 5th at 801. At issue in *Cornell* was a Bane Act claim arising from a wrongful arrest, which defendants claimed on appeal was insufficient for lack of having included a separately coercive act apart from the arrest itself. *Id.* at 795. Ultimately, the court disagreed with the principal that coercion must be independent from the constitutional violation. *Id.* at 795–800.

First, the court examined the precedent in *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947 (2012), and explained that "*Shoyoye's* discussion of coercion 'independent from the coercion inherent in the wrongful detention itself' was aimed at separating tort liability from statutory liability in the specific context of a jail over detention following a lawful arrest[.]" *Cornell*, 17 Cal. App. 5th at 799. The court then "acknowledge[d] that some courts have read *Shoyoye* as having announced 'independen[ce] from inherent coercion' as a requisite element of all section 52.1 claims alleging search-and-seizure violations," but concluded that "those courts misread the statute[.]" *Id*.

The court then examined the statute and stated that the statute targets interference with rights, making no distinction whether the coercion is inherent in the underlying act or not—"[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Id.* at 800. Ultimately, the *Cornell* court concluded that:

Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, *in addition*, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved—unlawful arrest.

*Id.*

In the present action, the Court finds the principles of *Cornell* and its analysis of *Shoyoye* applies to all Bane Act claims. *See Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1083 (E.D. Cal. 2018); *see also Craig v. Cty. of Santa Clara*, No. 17-CV-02115-LHK, 2018 WL 3777363, at *19 (N.D. Cal. Aug. 9, 2018) (highlighting that the Ninth Circuit "recently adopted a position on this issue that binds this Court" that "[n]othing in the text of the [Bane Act] requires that the offending threat, intimidation or coercion be independent from the constitutional violation alleged.") (citation and internal quotation marks omitted). However, despite the fact that Victoria need not plead threats separate from the constitutional violation, Victoria's SAC is still inadequately pled.

Victoria alleges that one of the arresting officers searched his saddlebags without his consent. (Doc. No. 17 ¶ 20.) Specifically, Victoria argues that he only gave consent for the search after "stern comments" from the officer stating that they "could do this the easy way or the hard way." (*Id.*) This put Victoria in fear that the arresting officers might shoot him. (*Id.*) Victoria also pleads that "Defendants violated [his] rights" secured by the Constitution. (*Id.* ¶ 60.) Thus, the major downfall of Plaintiff's SAC is his failure to plead the actions of each Defendant individually. Presently, Victoria groups all of the Defendants together and then concludes that his rights pursuant to § 52.1 were violated. However, group pleading does not provide Defendants fair notice of the claims against them. *See GenProbe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 960–62 (S.D. Cal. 1996). Accordingly, the Court **GRANTS** City Defendants' motion to dismiss Victoria's Bane Act cause of action on different grounds that those argued in the motion.

In sum, the Court **GRANTS** City Defendants' motion to dismiss.

C.     The Officer Defendants' Motion to Dismiss

     *i. Qualified Immunity*

The basis of the Officer Defendants' motion to dismiss is that they are entitled to qualified immunity. (*See generally* Doc. No. 24.) Victoria challenges the use of this defense. (*See generally* Doc. No. 34.)

In suits under § 1983, qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citation omitted). In general, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protections of qualified immunity apply regardless of whether the government official's error is a "mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Thus, qualified immunity balances two important interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In *Saucier v. Katz*, 533 U.S. 194, 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims: (1) the plaintiff must make out a violation of a constitutional right; and (2) next the court must decide whether the right at issue was "clearly established" at the time of a defendant's alleged misconduct. Currently, courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Presently, Officer Defendants argue that qualified immunity applies to the events leading up to Victoria's arrest, his arrest, the search during the detention, and the

application for the search warrant. (*See generally* Doc. No. 24-1.) The Court notes however that as currently pled, the Court is being asked to decide qualified immunity aided only by a skeletal factual background provided by Victoria in his amended complaint. The Ninth Circuit has found that this type of decision making is at times complex:

> The confluence of two well-intentioned doctrines, notice pleading and qualified immunity, give rise to this exercise in legal decisionmaking [sic] based on facts both hypothetical and vague. On one hand, the federal courts may not dismiss a complaint unless "it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations" . . . On the other hand, government officials are entitled to raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery and other pre-trial procedures . . . The unintended consequence of this confluence of procedural doctrines is that the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record . . . .

*Kwai Fun Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004) (internal citations omitted).

Ultimately, as expressed during the motion hearing, the Court does not believe that it has before it enough information to rule on every single aspect of the Officer Defendants' claims of qualified immunity. Specifically, the Court highlights that the chronology of the events after Victoria was stopped are not clearly alleged. Accordingly, the Court is not in a position to be able to pick apart the pleadings with the particular degree of scrutiny needed under a qualified immunity analysis. Moreover, as Victoria is being granted leave to amend his claims, a qualified immunity analysis is premature.

Based upon this, the Court **DENIES** Officer Defendants' motion to dismiss based on qualified immunity **WITHOUT PREJUDICE**. *See Gonzales v. Best*, No. C 08-5042 RS (PR), 2010 WL 1690098, at *2 (N.D. Cal. Apr. 26, 2010) (denying defendants' qualified immunity defense as the complaint was being dismissed on other grounds); *see also George v. Uribe*, No. 11-CV-70 JLS (RBB), 2012 WL 993243, at *7 (S.D. Cal. Mar. 23, 2012) (finding the qualified immunity defense premature until, and if, the plaintiff could amend his complaint to successfully state a claim).

### ii. The Fourth and Fifth Causes of Action

Officer Defendants argue that the fourth and fifth causes of action fail as to the City and Zimmerman as they do not specify the conduct of each individual defendant. (Doc. No. 24-1 at 34.) As discussed *supra* pp. 8–14, the Court agrees. Accordingly, the Court **DISMISSES** the fourth and fifth causes of action.

### iii. The Sixth Causes of Action

Officer Defendants argue that Victoria cannot bring damages claims directly under the unreasonable search and seizure provisions of the California Constitution. (Doc. No. 24-1 at 35.) In opposition, Victoria argues that all sections of Article 1 are self-executing and allow for injunctive relief, which is the only relief he is requesting to stop further incidents of harassment. (Doc. No. 34 at 22–23.)

Victoria's SAC asserts that the conduct of Officer Defendants damaged him both financially and emotionally. (Doc. No. 17 ¶ 58.) Victoria then requests compensatory, general, punitive, and exemplary damages, attorneys' fees and costs, and injunctive relief. (*Id.* at 24.)

Section 13 of Article 1 of the California Constitution does not confer a private right of action for damages. *See Elliott v. Solis*, No. 1:17-cv-01214-LJO-SAB, 2017 WL 4811747, at *7 (E.D. Cal. Oct. 24, 2017). As it is unclear what relief Victoria seeks under this cause of action and the SAC requests both injunctive relief and various damages, the Court **DISMISSES** Victoria's sixth cause of action pursuant to Rule 8.

### iv. The Seventh Cause of Action

Officer Defendants also seek to dismiss Victoria's Bane Act claim for failure to allege any facts that would indicate threats, intimidation, and coercion independent from the intimidation and coercion inherent in a detention. (Doc. No. 24-1 at 36.) For the same reasons explained *supra* pp. 15–17, the Court **GRANTS** Officer Defendants' motion to dismiss the seventh cause of action.

///

///

### iv. The Ninth Cause of Action

Officer Defendants argue that Victoria has no viable claim IIED as the officers' actions were reasonable and justified. (Doc. No. 24-1 at 36.) Victoria retorts that the actions of the Officer Defendants was illegal and outrageous. (Doc. No. 34 at 24.)

Under California law, a prima facie case of IIED requires the following: (1) extreme and outrageous conduct by the defendant; (2) with the intention of causing, or reckless disregard of the probability of causing emotional distress; (3) "the plaintiff's suffering severe or extreme emotional distress"; and (4) "actual and proximate causation of the emotional distress by defendant's outrageous conduct." *See Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996).

Taking the allegations in the SAC as true, the Court finds Victoria's allegations are too conclusory to survive Officer Defendants' motion to dismiss. Victoria pleads that Officer Defendants "exhibited conduct that was outrageous," that they "intended to cause [him] emotional distress," that "they acted with reckless disregard of the probability that [he] would suffer emotional distress," and that as a result Victoria has suffered "severe emotional distress[.]" (Doc. No. 17 ¶ 64.) "Conclusory, 'threadbare' allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss." *Smith v. Stanislaus*, No. 1:11-cv-01655-LJO-SKO, 2012 WL 253241, at *3 (E.D. Cal. Jan. 26, 2012). Accordingly, the Court **GRANTS** Officer Defendants' motion to dismiss Victoria's IIED claim. *See King v. AC & R Advertising*, 65 F.3d 764, 770 (9th Cir. 1995) (explaining that outrageous must be so extreme as "to exceed all bounds of that usually tolerated in a civilized society.").

In sum, the Court **GRANTS IN PART AND DENIES IN PART** Officer Defendants' motion to dismiss. Officer Defendants' qualified immunity claim is **DENIED WITHOUT PREJUDICE**.

## IV. CONCLUSION

As explained in great detail above, City Defendants' motion to dismiss is **GRANTED** and Officer Defendants' motion to dismiss is **GRANTED IN PART AND**

**DENIED IN PART**. (Doc. Nos. 23, 24.) The Court provides Victoria leave to amend his complaint so that he may provide more factual allegations surrounding the events in this action as well as cure the deficiencies noted above. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that leave to amend should be "freely given" absent undue delay, bad faith, undue prejudice, or futility in amendment). Victoria must file a third amended complaint within **fourteen (14) days** of the date of this Order. Failure to file an amended complaint will result in the dismissal of this matter.

**IT IS SO ORDERED**.

Dated: September 5, 2018

Hon. Anthony J. Battaglia
United States District Judge

17-cv-1837-AJB-NLS