UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ARVAUNTI VICTORIA, | Case No.: 17-CV-1837-AJB-NLS |
|---|---|
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING DEFENDANTS CITY OF SAN DIEGO AND SHELLEY ZIMMERMAN'S MOTION TO DISMISS;** |
| CITY OF SAN DIEGO, DAVID DUNHOFF, individually and in his official capacity, et al. | |
| Defendants. | **(2) GRANTING IN PART AND DENYING IN PART DAVID DUNHOFF'S MOTION TO DISMISS;** |
| | **(3) GRANTING IN PART AND DENYING IN PART JUSTIN MONTOYA'S MOTION TO DISMISS;** |
| | **(4) GRANTING IN PART AND DENYING IN PART J. JOHNSON'S MOTION TO DISMISS;** |
| | **(5) GRANTING IN PART AND DENYING IN PART TIMOTHY COYLE'S MOTION TO DISMISS;** |

1

**(6) GRANTING IN PART AND DENYING IN PART ADAM GEORGE'S MOTION TO DISMISS; AND**

**(7) GRANTING DAVID WOLFF'S MOTION TO DISMISS**

(Doc. Nos. 50, 51, 52, 53, 54, 55, 56)

Pending before the Court are seven motions: (1) Defendants City of San Diego and Shelley Zimmerman's motion to dismiss; (2) Defendant Timothy Coyle's motion to dismiss; (3) Defendant David Dunhoff's motion to dismiss; (4) Defendant Adam George's motion to dismiss; (5) Defendant J. Johnson's motion to dismiss; (6) Defendant Justin Montoya's motion to dismiss; and (7) Defendant David Wolff's motion to dismiss. (Doc. Nos. 50, 51 52, 53, 54, 55, and 56.) Plaintiff filed oppositions to all the motions. (Doc. Nos. 61, 62, 63, 64, 65, 66, 67, and 68.) As will be explained in greater detail below, and based on the arguments presented in the papers and presented at the February 13, 2019 hearing on this motion, the Court **GRANTS** the City of San Diego and Shelley Zimmerman's motion to dismiss, **GRANTS** in part and **DENIES** in part David Dunhoff's motion to dismiss, **GRANTS** in part and **DENIES** in part Justin Montoya's motion to dismiss, **GRANTS** in part and **DENIES** in part J. Johnson's motion to dismiss, **GRANTS** in part and **DENIES** in part Timothy Coyle's motion to dismiss, **GRANTS** in part and **DENIES** in part Adam George's motion to dismiss, and **GRANTS** David Wolff's motion to dismiss.

## I. BACKGROUND[1]

The following allegations are taken from Plaintiff Arvaunti Victoria's third amended complaint ("TAC"). (Doc. No. 46.) This complaint arises out of a traffic stop on September 9, 2016. On September 9, 2016, Plaintiff was riding his motorcycle near Miramar and

---

[1] The following allegations are taken from the TAC and are construed as true for the limited purpose of resolving this motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Kearney Mesa Roads. (Doc. No. 46 ¶ 16.) Despite not having a decibel meter, the officers claimed they stopped Plaintiff for having loud pipes and no license plate. (*Id.*)

On September 9, 2016, Defendant Coyle and Officer Harper were surveilling the Off Base Bar for an assault that occurred on September 4, 2016. (*Id.* ¶¶ 16, 17.) The officers observed Plaintiff arrive on a motorcycle and don a vest containing the emblem of the "Chosen Few." (*Id.* ¶ 18.) When Plaintiff left the bar, the officers followed him. (*Id.* ¶ 19.) Defendants George and Johnson pulled over Plaintiff. (*Id.*) Defendant George informed Plaintiff that the reason for the stop was that Plaintiff had loud pipes. (*Id.*) Then either Defendant George or Defendant Johnson noticed Plaintiff's motorcycle did not have a license plate or a registration tag. (*Id.*) Plaintiff explained to the officers that the pipes were stock pipes and complied with all California emissions and volume standards. (*Id.* ¶ 20.) None of the six defendant officers had a decibel meter or any type of device that would measure the sound of the exhaust pipes. (*Id.* ¶ 21.)

After the initial stop, several more officers appeared. (*Id.* ¶ 22.) Defendant Montoya conducted a search of Plaintiff's saddlebags by stating the search could be done "the easy way or the hard way." (*Id.*) After that comment, Plaintiff consented to the search. (*Id.*) Defendants Coyle and Johnson conducted the search. (*Id.*) One of the officers discovered the vest for the "Chosen Few." (*Id.*) Plaintiff was also wearing several large rings on his hand. (*Id.* ¶ 23.) Plaintiff was then arrested and charged with possession of metal knuckles. (*Id.*)

Plaintiff's cell phone was also seized. (*Id.* ¶ 24.) Defendant Montoya demanded Plaintiff provide him with the password for the phone. (*Id.*) Defendant Montoya told Plaintiff that if he did not provide the cell phone password Defendant Montoya would order Plaintiff's motorcycle impounded. (*Id.*) After this statement, Plaintiff provided Defendant Montoya with his cell phone password. (*Id.*) However, Defendant Montoya was unable to unlock the phone and ordered the motorcycle to be impounded. (*Id.*)

Plaintiff was then placed in a police car to be transported to jail. (*Id.*) On the way to jail, Defendant Dunhoff gave Plaintiff "a second chance" to unlock his phone. (*Id.*)

Defendant Dunhoff stated that if Plaintiff provided Defendant Dunhoff access to his phone, someone could pick up the motorcycle instead of it being impounded. (*Id.*) Plaintiff unlocked the phone himself this time. (*Id.*)

Defendant Wolff then signed a sworn affidavit to obtain a search warrant for Plaintiff's cell phone. (*Id.* ¶ 41.) Defendant Wolff was not present at Plaintiff's arrest, but the events in the affidavit were relayed to him by Defendant Coyle. (*Id.*)

After Plaintiff's arrest, he paid $8,000 for bail as a result of the incident. (*Id.* ¶ 49.) The charges against Plaintiff were ultimately dismissed. (*Id.* ¶ 55.) However, Plaintiff claims he continues to suffer from mental and emotional distress from the incident. Thus, Plaintiff alleges the following causes of action: (1) violations of 42 U.S.C. § 1983—violation of his Fourth Amendment right—illegal detention against all individual Defendants; (2) false arrest against all individual Defendants; (3) illegal search against individual Defendants; (4) deliberate indifference against all Defendants; (5) deliberate indifference in regards to the purported custom and policies of the San Diego Police Department; (6) violation of the California Constitution Article I, § 13 against Defendants Coyle, Montoya, Dunhoff, Johnson, and George; (7) violation of California Civil Code § 52.1 against Defendants Montoya and Dunhoff; (8) injunctive relief pursuant to the Bane Act—California Civil Code § 52.1—against Defendants Montoya and Dunhoff; and (9) infliction of emotional distress against all individual Officer Defendants. (*See generally* Doc. No. 46.)

Plaintiff filed his complaint on September 11, 2017. (Doc. No. 1.) On September 21, 2017, Plaintiff amended his complaint. (Doc. No. 3.) On November 17, 2017, a joint motion to amend/correct the complaint was filed, (Doc. No. 15), which was granted on November 20, 2017, (Doc. No. 16). On January 5, 2018, the two motions to dismiss were filed. (Doc. Nos. 23, 24.) On September 5, 2018, the Court granted the City Defendants' motion to dismiss, granted in part and denied in part officer Defendants' motion to dismiss and granted Plaintiff leave to amend. (Doc. No. 44.) On September 19, 2018, Plaintiff filed his third amended complaint ("TAC"). (Doc. No. 46.) On October 30, 2018, the seven

4

motions to dismiss were filed. (Doc. Nos. 50, 51, 52, 53, 55, 56.)

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III.    DISCUSSION

The Court will first address Defendants' request for judicial notice. The Court will then address each motion to dismiss in turn.

A.    Defendants' Request for Judicial Notice

Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants City of San Diego and Defendant Zimmerman's motion to dismiss contained a request for judicial notice of thirteen exhibits: (1) *People of the State of California v. Chosen Few, M.C., et al.* ("Chosen Few Case"); (2) "Judgment After Default Against 9 Defendants" filed in the Chosen Few Case; (3) the declaration of Jenal filed in the Chosen Few Case; (4) the warrant and affidavit in support of Victoria/Plaintiff; (5) the police report at issue in this matter; (6) Police Magazine article; (7) California Highway Patrol Information Bulletin; (8) Title 13 California Code of Regulations section 1036(d)(1); (9) Plaintiff's Second Amended Complaint; (10) San Diego Population of 3.3 million people; (11) San Diego Police Street Gang Unit Mission; (12) Commission on Gang Prevention and Intervention purpose statement; and (13) 2015 to 2020 Commission on Gang Prevention and Intervention strategic action plan. (*See generally* Doc. No. 50-2.) Plaintiff asserts no objections to Defendants' request for judicial notice. (Doc. No. 61 at 10–11.)

As to Exhibits One through Three, as they are public records and documents from the state court, judicial notice is appropriate. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence."); *see also Molus v. Swan*, No. 05-CV-452-MMA (WVc), 2009 WL 160937, at *2 (S.D. Cal. Jan. 22, 2009) ("Courts also may take judicial notice of their own records[.]"). However, the Court may not take judicial notice of findings of facts from another case. *See Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. Sept. 12, 2006). Accordingly, the Court **GRANTS** Defendants' request for judicial notice of Exhibits One through Three for this limited purpose.

As to the arrest warrant, the Court will only take judicial notice of the reasonably undisputed facts such as the existence of the warrant, its filing date, and the date of the stop and arrest at issue, among other things. Thus, for this limited purpose, the Court **GRANTS** Defendants' request for judicial notice of Exhibit Four. *See Bunkley v. Verber*, No. 17-CV-05797-WHO, 2018 WL 1242168, at *2 (N.D. Cal. Mar. 9, 2018) (explaining that the court

could take judicial notice of the arrest warrant as it was not subject to reasonable dispute); *see also Ferguson v. United States*, No. 15-CV-1253, 2016 WL 4793180, at *3 (S.D. Cal. Sept. 14, 2016) (taking judicial notice of an arrest warrant because it was a "matter[] of public record, and the parties [did] not dispute [its] authenticity.").

In regard to the police report, despite the fact that some records of a state agency may be proper subjects of judicial notice, a district court "may not take judicial notice of documents filed with an administrative agency to prove the truth of the contents of the documents." *Zuccaro v. Martinez Unified School Dist.*, No. 16-CV-2709-EDL, 2016 WL 10807692, at *5 (N.D. Cal. Sept. 27, 2016); *see also Knighten v. City of Anderson*, No. 15-CV-1751-TLN-CMK, 2016 WL 1268114, at *5 (E.D. Cal. Mar. 31, 2016) (refusing to take judicial notice of police reports and facts contained in the report because they were subject to reasonable dispute between the parties). Thus, the Court only **GRANTS** limited judicial notice of Exhibit Five.

Exhibits Six, Seven, Eight, Eleven, Twelve, and Thirteen are all incorporated by reference in the TAC, which the TAC necessarily relies on, and a document upon which the TAC necessarily concerns. Accordingly, the Court may take judicial notice of these documents. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Thus, the Court **GRANTS** judicial notice of Exhibits Six, Seven, Eight, Eleven, Twelve, and Thirteen.

Exhibit Nine is simply a copy of Plaintiff's Second Amended Complaint, and thus is appropriate for judicial notice. *See Gerritsen*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence."). Accordingly, the Court **GRANTS** judicial notice of Exhibit Nine.

Exhibit Ten is simply that the population of San Diego is 3.3 million people, and thus is appropriate for judicial notice as it is public knowledge. Fed. R. Evid. 201(b); *see Reyn's v. Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, the Court **GRANTS** judicial notice of Exhibit Ten.

In sum, the Court **GRANTS** the City Defendants' request for judicial notice of these thirteen documents. (Doc. No. 50-2.)

B.   <u>Defendants City of San Diego and Shelley Zimmerman's Motion to Dismiss</u>

City Defendants assert Plaintiff's allegations are nothing more than legal conclusions and should be dismissed under Rule 8. (*See generally* Doc. No. 50-1.) Worth noting is that Plaintiff has agreed not to request that Chief Zimmerman remain in this case in her official capacity. (Doc. No. 61 at 18.) Accordingly, the Court will not address any claims against Chief Zimmerman in her official capacity and those claims are dismissed.

    *i.*     *First Through Third Causes of Action Against Zimmerman in her Individual Capacity*

Plaintiff's first through third causes of action allege violations of Plaintiff's Fourth Amendment right protecting against unreasonable search and seizure. (*See generally* Doc. No. 46.)

42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Specifically, Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009).

For supervisory liability for deliberate indifference, a plaintiff has been able to hold supervisors individually liable under § 1983 suits when "culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the Ninth Circuit explained that to be held liable, the supervisor need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Id*. at 645. Rather, the supervisor's participation could include his or her "own culpable action or

inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 646 (internal citations, quotation marks, and alterations omitted).

Thus, a defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federal secured right." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991). "The requisite causal connection can be established . . . by setting in motion a series of acts by others . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury[.]" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

First, Plaintiff alleges Defendant Zimmerman knew of the violations of constitutional rights and failed to act to prevent them. Second, Plaintiff alleges Defendant Zimmerman promulgated or implemented a policy violating constitutional rights of "motorcycle club" riders, and this policy was the moving force behind the violations. Here, Plaintiff alleges there have been twenty complaints in a four-year period complaining of suspicion-less stops. (Doc. No. 46 ¶ 39.) However, Plaintiff does not allege these complaints were all made by "motorcycle club" riders. Further, twenty incidents over a four-year period in a city of 3,000,000 people does not establish a policy based on a pattern. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Plaintiff has simply failed to allege any specific and non-conclusory allegations that Defendant Zimmerman personally participated in Plaintiff's alleged constitutional violation, implemented or promogulated

9

an unconstitutional policy, had knowledge of an unconstitutional policy, or failed to protect Plaintiff.

       *ii.*    *Ninth Cause of Action Against Defendant Zimmerman in her Individual Capacity*

Plaintiff alleges a claim of Intentional Infliction of Emotional Distress ("IIED") against Defendant Zimmerman in her own capacity. A claim for IIED requires a prima facie showing of "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotion distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). Here, Plaintiff's claim again fails to allege sufficient facts to establish Defendant Zimmerman's individual liability for a claim of IIED. Defendant Zimmerman was not at the scene of the traffic stop nor did she implement a policy that caused Plaintiff's IIED.

Accordingly, Defendant Zimmerman in both her individual and official capacity is dismissed.

       *iii.*    *The First Through Fifth Causes of Action Against the City*

"A municipality can be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the constitutional violation at issue; *respondeat superior* or vicarious liability will not attach under section 1983." *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 920 (N.D. Cal. 2010) (citing *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 694–95 (1978)). Plaintiff must then allege that: (1) he was deprived of his constitutional rights by the City of San Diego; (2) that the City of San Diego had customs or policies "which amounted to deliberate indifference" to his constitutional rights; and (3) that these policies were the "moving force behind the constitutional violations." *Buckheit*, 713 F. Supp. 2d at 920 (citation omitted).

    Plaintiff first asserts that Defendant Zimmerman had a formal or de facto policy to harass and suppress motorcycle clubs it considered to be gangs in the City of San Diego.

(Doc. No. 46 ¶ 10.) Plaintiff claims that a policy exists since twenty complaints were filed in the period of four years claiming suspicion-less stops. As explained above, this does not establish a pattern or policy.

During the hearing on this matter, Plaintiff claimed that Exhibit Eleven to Defendants' motion established a written policy. Exhibit Eleven is the mission statement of the Street Gang Unit as published on the City of San Diego's website. In pertinent part the statement is as follows:

> The collective mission of the Street Gang Unit is to reduce gang related crimes and active gang membership in the City of San Diego. This is accomplished through vigorous prosecution of gang members involved in criminal activity by use of covert surveillance and special operations, proactive field contacts and arrests of gang members. These strategies reduce gang related criminal activity in our communities and enhances the feeling of safer neighborhoods for the residents of San Diego.

(Doc. No. 50-1, Ex. 11.) This statement simply does not plausibly establish a written policy to harass and suppress motorcycle clubs. Plaintiff asserts that the pleading level for "a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to an official policy or practice." (Doc. No. 61 at 15 (quoting *Butler v. Los Angeles Cty.*, 617 F. Supp. 2d 994, 1000 (C.D. Cal. 2008)).) However, Plaintiff has failed to even plausibly plead the first step, which is that a policy to harass and suppress motorcycle clubs even exists. Plaintiff has simply failed to allege sufficient factual claims to establish the plausible existence of a de facto policy, practice, or custom, or to establish a policy based on the pattern of exhibited contacts and complaints. Accordingly, Plaintiff simply has failed to allege a § 1983 claim for municipal liability.

Plaintiff next asserts a ratification theory of supervisorial liability. To establish municipal liability under a ratification theory, a plaintiff must allege facts that support the finding that the municipality had knowledge of the alleged constitutional violations. *See Garrison v. Burke*, 165 F.3d 565, 572, n.6 (7th Cir. 1999). However, Plaintiff's only

allegation that supports this theory is "this policy is approved, supported, ratified and overseen at the highest level of the police force." (Doc. No. 46 ¶ 38.) This conclusory allegation is simply not enough to support a ratification theory of supervisorial liability.

Plaintiff then alleges a theory of liability based upon Defendants' failure to train its subordinates. To establish this theory, Plaintiff must allege facts supporting that (1) Defendants have an inadequate training program, (2) there was deliberate indifference on the part of Defendants inadequately training its law enforcement officers, and (3) that the inadequate training "actually caused" a deprivation of Plaintiff's constitutional rights. *See Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). Plaintiff asserts that the failure to train allegations are supported by the policy itself. (Doc. No. 61 at 16.) However, as the Court has concluded, Plaintiff has failed to allege any such policy. Accordingly, Plaintiff has failed to establish a theory of liability based upon Defendants' failure to train its subordinates.

Accordingly, the City is dismissed.

C.    Defendant David Dunhoff's Motion to Dismiss

Defendant Dunhoff is sued in both his individual capacity and official capacity arising from the event of Plaintiff's traffic stop.

i.    *First Through Third Causes of Action Against Defendant Dunhoff in his Individual Capacity*

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to establish § 1983 liability, a plaintiff must show both (1) the deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was

caused by a person acting under color of state law. *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson*, 588 F.2d at 743. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused Plaintiff's constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo*, 423 U.S. at 370–71).

As to Plaintiff's first cause of action, Plaintiff has not pled any facts expressing that Defendant Dunhoff personally participated in Plaintiff's illegal detention. Further, Plaintiff does not dispute this fact in his opposition, but rather focuses on the arrest and search of Plaintiff's phone in relation to Defendant Dunhoff. Because Defendant Dunhoff did not personally participate in Plaintiff's detention and Plaintiff alleges no facts that he caused Plaintiff to be detained, the first cause of action is dismissed as to Defendant Dunhoff.

Plaintiff's second cause of action revolves around the false arrest of Plaintiff. The absence of probable cause is a necessary element of a § 1983 false arrest claim. *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). "[P]robable cause exists when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the Plaintiff] had committed a crime." *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2003) (citing *United States v. Smith*, 970 F.2d 789, 792 (9th Cir. 1986)). "When there has been communications among [officers], probable cause can rest upon the investigating [officers] 'collective knowledge.'" *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990).

Here, Plaintiff was arrested for having metal knuckles and conspiracy to commit a felony for the benefit of a street gang in violation of California Penal Codes §§ 21810 and 186.22(b)(1). Under Cal. Penal Code § 16920 "metal knuckles" are defined as:

> any device or instrument made wholly or partially of metal that is worn for purposes of offense or defense in or on the hand and

that either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow. The metal contained in the device may help support the hand or fist, provide shield to protect it, or consist of projections or studs which would contact the individual receiving a blow.

Defendant Dunhoff argues that Plaintiff has not alleged factual allegations supporting Defendant Dunhoff's participation in the false arrest, however, Plaintiff has alleged that Defendant Dunhoff was at the scene and that all the officers participated together in deciding what charges to assert. *See Del Vizo*, 918 F.2d at 826. Accordingly, Plaintiff has alleged sufficient allegations to show Defendant Dunhoff's participation in the false arrest.

Defendant Dunhoff argues that Plaintiff's claim also fails as it is insufficient as a matter of law. However, as pled, Plaintiff alleges that his rings were mere jewelry. Similar rings to the ones he was wearing are sold in several stores. Furthermore, being a member of a gang is not a crime. *People v. Rodriguez*, 55 Cal. 4th 1125, 1147 (2012). Accordingly, Plaintiff has alleged factual allegations alleging that there was no probable cause to arrest him.

Plaintiff's third cause of action alleges an illegal search. "[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." *Carroll v. United States*, 267 U.S. 132, 149 (1925); *see also United States v. Hartz*, 458 F.3d 1011, 1017 (9th Cir. 2006). Here, Plaintiff has alleged sufficient factual allegations to show that the officers did not have sufficient probable cause and reasonable suspicion to pull Plaintiff over, search his motorcycle for weapons and arrest him. Defendant Dunhoff argues that Plaintiff has failed to allege his personal participation in the search. However, Plaintiff specifically alleges that Defendant Dunhoff illegally

searched his phone on the drive to the police station. (Doc. No. 46 ¶ 24.) Accordingly, Plaintiff has alleged a claim against Defendant Dunhoff for the third cause of action.

### ii. Fourth Cause of Action Against Defendant Dunhoff in his Individual Capacity

Plaintiff's fourth cause of action against Defendant Dunhoff is for deliberate indifference of Plaintiff's right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). Here, since Plaintiff has pled sufficient facts that Defendant Dunhoff participated in his illegal arrest and search of his phone, Plaintiff has alleged sufficient factual allegations for the basis of a deliberate indifference claim for his right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion.

### iii. Fifth Cause of Action Against Defendant Dunhoff in his Individual Capacity

Plaintiff's fifth cause of action against Defendant Dunhoff is for deliberate indifference under a failure to train legal theory. A municipality may be held liable under a theory of omission for failure to adequately train. *See Cloutheir v. Cnty. of Contra Cost*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds by, Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Here, Plaintiff has pled this action against Defendants Zimmerman and the City of San Diego. Defendant Dunhoff is an agent of the City and the City would be the municipality for which liability would attach. Plaintiff has not alleged that Defendant Dunhoff is the supervisor who would be in charge of training. The suit against Defendant Dunhoff in his individual capacity is redundant and improperly pled. Further, the Court has already discussed above that Plaintiff has failed to allege sufficient factual allegations to state a claim for deliberate indifference on the basis of failure to train against the City. Accordingly, Plaintiff's fifth cause of action against Defendant Dunhoff is dismissed.

/ / /

*iv.*    *Sixth Cause of Action Against Defendant Dunhoff in his Individual Capacity*

Plaintiff's sixth cause of action against Defendant Dunhoff is for violation of California Constitution Art. 1 Section 13. As explained above, the Court has held that Plaintiff has not sufficiently pled a policy that officers conduct suspicion-less stops to harass motorcycle riders. The policy would be the basis for which Plaintiff states there is violation of Article 1 of Section 13 of the California Constitution. Accordingly, this cause of action is dismissed.

*v.*    *Seventh and Eighth Causes of Action Against Defendant Dunhoff in his Individual Capacity*

Plaintiff's seventh and eighth causes of action allege violations of California's Bane Act. The Bane Act, California Civil Code § 52.1, provides for a claim against anyone who: "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state …" The Bane Act does not require that a "threat, intimidation or coercion" to be "independent" from the threats, intimidation, or coercion inherent in the underlying constitutional violation. *See Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017); *see also Craig v. Cty. of Santa Clara*, No. 17-CV-02115-LHK, 2018 WL 3777363, at *19 (N.D. Cal. Aug. 9, 2018). Here, Plaintiff has sufficiently alleged that Defendant Dunhoff stated he would give Plaintiff a "second chance" and that if he unlocked the phone, Defendant Dunhoff would call someone to have the motorcycle picked up rather than impounded. (Doc. No. 46 ¶ 24.) Accordingly, Plaintiff has sufficiently plead the seventh and eighth causes of action against Defendant Dunhoff.

*vi.*    *Ninth Cause of Action Against Defendant Dunhoff in his Individual Capacity*

Plaintiff's ninth cause of action against Defendant Dunhoff is intentional infliction of emotional distress ("IIED"). To establish a claim for IIED, a plaintiff must show: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffers severe

or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 925–26 (N.D. Cal. 2014)(citing *Christensen v. Super Ct.*, 54 Cal. 3d 868, 903 (1991)). For the conduct to be considered outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979), o*verturned on other grounds by legislative action*, Cal. Penal Code § 243.

Here, Plaintiff has failed to allege any conduct on behalf of Defendant Dunhoff that is so extreme to exceed all bounds of that which is usually tolerated in a traffic stop. Plaintiff alleges in a conclusory fashion that he suffered mental and emotional distress as result of the City's policy and by his arrest, booking, processing and lock-up. This is simply insufficient. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014) (granting motion to dismiss because Plaintiff's IIED claim conclusory alleged that Defendants "caused her mental anguish, anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood.") Accordingly, Plaintiff's ninth cause of action is dismissed.

D.    Defendant Justin Montoya's Motion to Dismiss

Defendant Montoya is sued in both his individual capacity and official capacity arising from the event of Plaintiff's traffic stop.

   i.    *First Through Third Causes of Action Against Defendant Montoya in his Individual Capacity*

As to Plaintiff's first cause of action, Plaintiff has not pled any facts expressing that Defendant Montoya personally participated in Plaintiff's illegal detention. Further, Plaintiff does not dispute this fact in his opposition, but rather focuses on the arrest and search of Plaintiff's saddlebags in relation to Defendant Montoya. Because Defendant Montoya did not personally participate in Plaintiff's detention and Plaintiff alleges no facts that he caused Plaintiff to be detained, the first cause of action is dismissed as to Defendant Montoya.

Defendant Montoya argues that Plaintiff has not alleged factual allegations supporting Defendant Montoya's participation in the false arrest, however, Plaintiff has alleged that Defendant Montoya was at the scene and that all the officers participated together in deciding on what charges to assert. *See Del Vizo*, 918 F.2d at 826. Accordingly, Plaintiff has alleged sufficient allegations to show Defendant Montoya's participation in the false arrest and that there was a lack of probable cause for the arrest.

Plaintiff has alleged sufficient factual allegations to show that the officers did not have sufficient probable cause and reasonable suspicion to pull Plaintiff over, search his motorcycle for weapons and arrest him. Defendant Montoya argues that Plaintiff has failed to allege his personal participation in the search. The Court agrees that Defendant Montoya did not actively participate in the search of Plaintiff's saddlebags or phone. Accordingly, Plaintiff has failed to allege a claim against Defendant Montoya for the third cause of action.

    *ii.*    *Fourth Cause of Action Against Defendant Montoya in his Individual Capacity*

Plaintiff's fourth cause of action against Defendant Montoya is for deliberate indifference of Plaintiff's right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion. Here, since Plaintiff has pled sufficient facts that Defendant Montoya participated in his illegal arrest, Plaintiff has alleged sufficient factual allegations for the basis of a deliberate indifference claim for his right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion.

    *iii.*    *Fifth Cause of Action Against Defendant Montoya in his Individual Capacity*

Plaintiff's fifth cause of action against Defendant Montoya is for deliberate indifference under a failure to train legal theory. Here, Plaintiff has pled this action against Defendants Zimmerman and the City of San Diego. Defendant Montoya is an agent of the City and the City would be the municipality for which liability would attach. Plaintiff has not alleged that Defendant Montoya is the supervisor that would be in charge of training.

The suit against Defendant Montoya in his individual capacity is redundant and improperly pled. Further, the Court has already discussed above that Plaintiff has failed to allege sufficient factual allegations to state a claim for deliberate indifference on the basis of failure to train against the City. Accordingly, Plaintiff's fifth cause of action against Defendant Montoya is dismissed.

### iv. Sixth Cause of Action Against Defendant Montoya in his Individual Capacity

Plaintiff's sixth cause of action against Defendant Montoya is for violation of California Constitution Art. 1 Section 13. As explained above, the Court has held that Plaintiff has not sufficiently pled a policy that officers conduct suspicion-less stops to harass motorcycle riders. The policy would be the basis for which Plaintiff states there is violation of Article 1 of Section 13 of the California Constitution. Accordingly, this cause of action is dismissed.

### v. Seventh and Eighth Causes of Action Against Defendant Montoya in his Individual Capacity

Here, Plaintiff has sufficiently alleged that Defendant Montoya stated he could search Plaintiff's saddlebags "the easy way or the hard way." (Doc. No. 46 ¶ 22.) Further, Defendant Montoya demanded that Plaintiff provide a password for his phone and if Plaintiff failed to Defendant Montoya would have his motorcycle impounded. (*Id.* ¶ 24.) Accordingly, Plaintiff has sufficiently plead the seventh and eighth causes of action against Defendant Montoya.

### vi. Ninth Cause of Action Against Defendant Montoya in his Individual Capacity

Here, Plaintiff has failed to allege any conduct on behalf of Defendant Montoya that is so extreme to exceed all bounds of that which is usually tolerated in a traffic stop. Plaintiff alleges in a conclusory fashion that he suffered mental and emotional distress as result of the City's policy and by his arrest, booking, processing and lock-up. This is simply insufficient. *See Landucci*, 65 F. Supp. 3d at 712 (granting motion to dismiss because Plaintiff's IIED claim conclusory alleged that Defendants "caused her mental anguish,

anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood.") Accordingly, Plaintiff's ninth cause of action is dismissed.

E.    Defendant J. Johnson's Motion to Dismiss

Defendant Johnson is sued in both his individual capacity and official capacity arising from the event of Plaintiff's traffic stop.

        i.    *First Through Third Causes of Action Against Defendant Johnson in his Individual Capacity*

Plaintiff's first cause of action involves the illegal detention of Plaintiff against Defendant Johnson. The Fourth Amendment requires that a detention be supported by facts and inferences that demonstrate a reasonable suspicion that the person detained may be involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops. *United States v. Lopez–Soto*, 205 F.3d 1101, 1104–05 (9th Cir.2000). To satisfy the Fourth Amendment's reasonableness requirement, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Id.* (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996)).

A traffic stop is reasonable at its inception if the detaining officer, at the very least, reasonably suspects the driver has violated the law. An investigative stop is not subject to strict time limitations as long as the officer is pursuing the investigation in a diligent and reasonable manner. *United States v. Sharpe*, 470 U.S. 675, 686–87 (1985). The period of detention may be permissibly extended if new grounds for suspicion of criminal activity continue to unfold. *United States v. Mayo*, 394 F.3d 1271, 1275 (9th Cir. 2005).

Defendant Johnson attempts to argue that police officers have reasonable suspicion to stop a vehicle for violation of vehicular licensing laws where the officer saw neither license plates nor a temporary permit before he made the stop. *See Brocato v. Perez*, No. 17-CV-0053-RJC, 2017 WL 603304, at *4 (C.D. Cal. Oct. 4, 2017). While this may be true, Plaintiff states that neither Defendant Johnson nor Defendant George noticed that

Plaintiff's motorcycle did not have a license plate or registration tag displayed until after the stop. A traffic stop must be reasonable at its inception. Plaintiff alleges that Defendant George specifically stated that the stop was for loud pipes. (Doc. No. 46 ¶ 19.) Since the Court must accept Plaintiff's factual allegations as true at this point, the lack of license plate and registration tag may not serve as the reasonable suspicion for the traffic stop.

Here, Plaintiff was stopped on the basis that his pipes were loud. Plaintiff asserts that he told Defendants that the pipes were stock pipes, the exhaust pipes were installed at the factory and comply with all California emissions and volume standards and specifications. (Doc. No. 46 ¶ 20.) Further, Defendants did not make any attempt to measure the decibel level of the pipes. (*Id.* ¶ 21.) In fact, Defendants did not mention the loud pipes again after Defendant George's comment to Plaintiff. Based on Plaintiff's pleadings, loud pipes may not serve as reasonable suspicion for the stop at this stage of the litigation. Accordingly, Plaintiff has sufficiently alleged facts that there was no reasonable suspicion for the traffic stop and thus, resulted in an illegal detention.

Defendant Johnson argues that Plaintiff has not alleged factual allegations supporting Defendant Johnson's participation in the false arrest, however, Plaintiff has alleged that Defendant Johnson was at the scene and that all the officers participated together in deciding on what charges to assert. *See Del Vizo*, 918 F.2d at 826. Accordingly, Plaintiff has alleged sufficient allegations to show Defendant Johnson's participation in the false arrest and there was a lack of probable cause for the arrest.

Plaintiff's third cause of action alleges an illegal search. Here, Plaintiff has alleged sufficient factual allegations to show that the officers did not have sufficient probable cause and reasonable suspicion to pull Plaintiff over, search his motorcycle for weapons and arrest him. Defendant Johnson argues that Plaintiff has failed to allege his personal participation in the search. However, Plaintiff specifically alleges that Defendant Johnson illegally searched his saddlebags. (Doc. No. 46 ¶ 22.) Accordingly, Plaintiff has alleged a claim against Defendant Johnson for the third cause of action.

///

  *ii. Fourth Cause of Action Against Defendant Johnson in his Individual Capacity*

  Plaintiff's fourth cause of action against Defendant Johnson is for deliberate indifference of Plaintiff's right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion. Here, since Plaintiff has pled sufficient facts that Defendant Johnson participated in his illegal arrest, Plaintiff has alleged sufficient factual allegations for the basis of a deliberate indifference claim for his right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion.

  *iii. Fifth Cause of Action Against Defendant Johnson in his Individual Capacity*

  Plaintiff's fifth cause of action against Defendant Johnson is for deliberate indifference under a failure to train legal theory. Here, Plaintiff has pled this action against Defendants Zimmerman and the City of San Diego. Defendant Johnson is an agent of the City and the City would be the municipality for which liability would attach. Plaintiff has not alleged that Defendant Johnson is the supervisor that would be in charge of training. The suit against Defendant Johnson in his individual capacity is redundant and improperly pled. Further, the Court has already discussed above that Plaintiff has failed to allege sufficient factual allegations to state a claim for deliberate indifference on the basis of failure to train against the City. Accordingly, Plaintiff's fifth cause of action against Defendant Johnson is dismissed.

  *iv. Sixth Cause of Action Against Defendant Johnson in his Individual Capacity*

  Plaintiff's sixth cause of action against Defendant Johnson is for violation of California Constitution Art. 1 Section 13. As explained above, the Court has held that Plaintiff has not sufficiently pled a policy that officers conduct suspicion-less stops to harass motorcycle riders. The policy would be the basis for which Plaintiff states there is violation of Article 1 of Section 13 of the California Constitution. Accordingly, this cause of action is dismissed.

/ / /

/ / /

*v.*     *Ninth Cause of Action Against Defendant Johnson in his Individual Capacity*

Here, Plaintiff has failed to allege any conduct on behalf of Defendant Johnson that is so extreme to exceed all bounds of that is usually tolerated in a traffic stop. Plaintiff alleges in a conclusory fashion that he suffered mental and emotional distress as result of the City's policy and by his arrest, booking, processing and lock-up. This is simply insufficient. *See Landucci*, 65 F. Supp. 3d at 712 (granting motion to dismiss because Plaintiff's IIED claim conclusory alleged that Defendants "caused her mental anguish, anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood.") Accordingly, Plaintiff's ninth cause of action is dismissed.

F.     Defendant Timothy Coyle's Motion to Dismiss

Defendant Coyle is sued in both his individual capacity and official capacity arising from the event of Plaintiff's traffic stop.

*i.*     *First Through Third Causes of Action Against Defendant Coyle in his Individual Capacity*

As to Plaintiff's first cause of action, Plaintiff has not pled any facts expressing that Defendant Coyle personally participated in Plaintiff's illegal detention. Further, Plaintiff does not dispute this fact in his opposition, but rather focuses on the arrest and search of Plaintiff's saddlebags in relation to Defendant Coyle. Because Defendant Coyle did not personally participate in Plaintiff's detention and Plaintiff alleges no facts that he caused Plaintiff to be detained, the first cause of action is dismissed as to Defendant Coyle.

Defendant Coyle argues that Plaintiff has not alleged factual allegations supporting Coyle's participation in the false arrest, however, Plaintiff has alleged that Defendant Coyle was at the scene and that all the officers participated together in deciding on what charges to assert. *See Del Vizo*, 918 F.2d at 826. Accordingly, Plaintiff has alleged sufficient allegations to show Defendant Coyle's participation in the false arrest and that there was a lack of probable cause for the arrest.

Plaintiff's third cause of action alleges an illegal search. Here, Plaintiff has alleged sufficient factual allegations to show that the officers did not have sufficient probable cause

and reasonable suspicion to pull Plaintiff over, search his motorcycle for weapons and arrest him. Defendant Coyle argues that Plaintiff has failed to allege his personal participation in the search. However, Plaintiff specifically alleges that Defendant Coyle illegally searched his saddlebags. (Doc. No. 46 ¶ 22.) Accordingly, Plaintiff has alleged a claim against Defendant Coyle for the third cause of action.

ii.     *Fourth Cause of Action Against Defendant Coyle in his Individual Capacity*

Plaintiff's fourth cause of action against Defendant Coyle is for deliberate indifference of Plaintiff's right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion. Here, since Plaintiff has pled sufficient facts that Defendant Coyle participated in his illegal arrest, Plaintiff has alleged sufficient factual allegations for the basis of a deliberate indifference claim for his right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion.

iii.     *Fifth Cause of Action Against Defendant Coyle in his Individual Capacity*

Plaintiff's fifth cause of action against Defendant Coyle is for deliberate indifference under a failure to train legal theory. Here, Plaintiff has pled this action against Defendants Zimmerman and the City of San Diego. Defendant Coyle is an agent of the City and the City would be the municipality for which liability who would attach. Plaintiff has not alleged that Defendant Coyle is the supervisor would be in charge of training. The suit against Defendant Coyle in his individual capacity is redundant and improperly pled. Further, the Court has already discussed above that Plaintiff has failed to allege sufficient factual allegations to state a claim for deliberate indifference on the basis of failure to train against the City. Accordingly, Plaintiff's fifth cause of action against Defendant Coyle is dismissed.

iv.     *Sixth Cause of Action Against Defendant Coyle in his Individual Capacity*

Plaintiff's sixth cause of action against Defendant Coyle is for violation of California Constitution Art. 1 Section 13. As explained above, the Court has held that Plaintiff has not sufficiently pled a policy that officers conduct suspicion-less stops to harass motorcycle

riders. The policy would be the basis for which Plaintiff states there is violation of Article 1 of Section 13 of the California Constitution. Accordingly, this cause of action is dismissed.

*v.*    *Ninth Cause of Action Against Defendant Coyle in his Individual Capacity*

Here, Plaintiff has failed to allege any conduct on behalf of Defendant Coyle that is so extreme to exceed all bounds of that which is usually tolerated in a traffic stop. Plaintiff alleges in a conclusory fashion that he suffered mental and emotional distress as result of the City's policy and by his arrest, booking, processing and lock-up. This is simply insufficient. *See Landucci*, 65 F. Supp. 3d at 712 (granting motion to dismiss because Plaintiff's IIED claim conclusory alleged that Defendants "caused her mental anguish, anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood.") Accordingly, Plaintiff's ninth cause of action is dismissed.

G.    Defendant Adam George's Motion to Dismiss

Defendant George is sued in both his individual capacity and official capacity arising from the event of Plaintiff's traffic stop.

*i.*    *First Through Third Causes of Action Against Defendant George in his Individual Capacity*

Plaintiff's first cause of action involves the illegal detention of Plaintiff against Defendant George. Similar to Defendant Johnson, Defendant George attempts to argue that police officers have reasonable suspicion to stop a vehicle for violation of vehicular licensing laws where the officer saw neither license plates nor a temporary permit before he made the stop. *See Brocato*, 2017 WL 603304, at *4. While this may be true, Plaintiff states that neither Defendant Johnson nor Defendant George noticed that Plaintiff's motorcycle did not have a license plate or a registration tag displayed until after the stop. A traffic stop must be reasonable at its inception. Plaintiff alleges that Defendant George specifically stated that the stop was for loud pipes. (Doc. No. 46 ¶ 19.) Since the Court must accept Plaintiff's factual allegations as true at this point, the lack of license plate and registration tag may not serve as the reasonable suspicion for the traffic stop.

Here, Plaintiff was stopped on the basis that his pipes were loud. Plaintiff asserts that he told Defendants that the pipes were stock pipes, the exhaust pipes were installed at the factory and comply with all California emissions and volume standards and specifications. (Doc. No. 46 ¶ 20.) Further, Defendants did not make any attempt to measure the decibel level of the pipes. (*Id.* ¶ 21.) In fact, Defendants did not mention the loud pipes again after Defendant George's comment to Plaintiff. Based on Plaintiff's pleadings, loud pipes may not serve as reasonable suspicion for the stop at this stage of the litigation. Accordingly, Plaintiff has sufficiently alleged facts that there was no reasonable suspicion for the traffic stop and thus, resulted in an illegal detention.

Defendant George argues that Plaintiff has not alleged factual allegations supporting Defendant George's participation in the false arrest, however, Plaintiff has alleged that Defendant George was at the scene and that all the officers participated together in deciding on what charges to assert. *See Del Vizo*, 918 F.2d at 826. Accordingly, Plaintiff has alleged sufficient allegations to show Defendant George's participation in the false arrest and that there was a lack of probable cause for the arrest.

Plaintiff has alleged sufficient factual allegations to show that the officers did not have sufficient probable cause and reasonable suspicion to pull Plaintiff over, search his motorcycle for weapons and arrest him. Defendant George argues that Plaintiff has failed to allege his personal participation in the search. The Court agrees that Defendant George did not actively participate in any search of Plaintiff's belongings. Accordingly, Plaintiff has failed to allege a claim against Defendant George for the third cause of action.

     *ii.*    *Fourth Cause of Action Against Defendant George in his Individual Capacity*

Plaintiff's fourth cause of action against Defendant George is for deliberate indifference of Plaintiff's right to be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion. Here, since Plaintiff has pled sufficient facts that Defendant George participated in his illegal arrest, Plaintiff has alleged sufficient factual allegations for the basis of a deliberate indifference claim for his right to

be free from arbitrary detainment, traffic stops, search and arrest without probable cause or reasonable suspicion.

### iii. Fifth Cause of Action Against Defendant George in his Individual Capacity

Plaintiff's fifth cause of action against Defendant George is for deliberate indifference under a failure to train legal theory. Here, Plaintiff has pled this action against Defendants Zimmerman and the City of San Diego. Defendant George is an agent of the City and the City would be the municipality for which liability would attach. Plaintiff has not alleged that Defendant George is the supervisor that would be in charge of training. The suit against Defendant George in his individual capacity is redundant and improperly pled. Further, the Court has already discussed above that Plaintiff has failed to allege sufficient factual allegations to state a claim for deliberate indifference on the basis of failure to train against the City. Accordingly, Plaintiff's fifth cause of action against Defendant George is dismissed.

### iv. Sixth Cause of Action Against Defendant George in his Individual Capacity

Plaintiff's sixth cause of action against Defendant George is for violation of California Constitution Art. 1 Section 13. As explained above, the Court has held that Plaintiff has not sufficiently pled a policy that officers conduct suspicion-less stops to harass motorcycle riders. The policy would be the basis for which Plaintiff states there is violation of Article 1 of Section 13 of the California Constitution. Accordingly, this cause of action is dismissed.

### v. Ninth Cause of Action Against Defendant George in his Individual Capacity

Here, Plaintiff has failed to allege any conduct on behalf of Defendant George that is so extreme to exceed all bounds of that which is usually tolerated in a traffic stop. Plaintiff alleges in a conclusory fashion that he suffered mental and emotional distress as result of the City's policy and by his arrest, booking, processing and lock-up. This is simply insufficient. *See Landucci*, 65 F. Supp. 3d at 712 (granting motion to dismiss because Plaintiff's IIED claim conclusory alleged that Defendants "caused her mental anguish,

anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood.") Accordingly, Plaintiff's ninth cause of action is dismissed.

H.    Defendant David Wolff's Motion to Dismiss

Based on Plaintiff's TAC and Plaintiff's counsel's comments at the hearing on this motion, Defendant Wolff was not present during the traffic stop or arrest. Plaintiff does state that Defendant Wolff arrived at or near the point of the saddlebag search in his TAC. (Doc. No. 46 ¶ 22.) However, Defendant Wolff is not mentioned again in regard to the traffic stop incident. Later in the TAC, Plaintiff states Defendant Wolff was not present at the arrest of Plaintiff and his affidavit for the warrant was based on events described to him by Defendant Coyle. (*Id.* ¶ 41.) Plaintiff does not address this discrepancy in his opposition. Further, Plaintiff's counsel at the February 14, 2019 hearing on this instant motion stated that Defendant Wolff's role was obtaining the search warrant. Accordingly, the Court will dismiss the first, second, fourth and ninth causes of action as to Defendant Wolff without prejudice as it does not appear he was present during the traffic stop and arrest.

Plaintiff alleges that Defendant Wolff obtained a search warrant for Plaintiff's phone based on information received from Defendant Coyle. While, the TAC alleges that a warrant was obtained based on a false affidavit, Plaintiff fails to allege that the warrant was ever actually executed. The warrant was obtained after the stop and arrest. The only search Plaintiff actually alleges is the search of his saddlebags during the stop and arrest and he unlocks his phone while in the police car on the way to the station. Accordingly, if the warrant was not executed, Defendant Wolff did not participate in an illegal search. Thus, the Court will dismiss the third cause action as to Defendant Wolff.

Plaintiff's fifth cause of action against Defendant Wolff is for deliberate indifference under a failure to train legal theory. Here, Plaintiff has pled this action against Defendants Zimmerman and the City. Defendant George is an agent of the City and the City would be the municipality for which liability would attach. Plaintiff has not alleged that Defendant Wolff is the supervisor that would be in charge of training. The suit against Defendant Wolff in his individual capacity is redundant and improperly pled. Further, the Court has

28

already discussed above that Plaintiff has failed to allege sufficient factual allegations to state a claim for deliberate indifference on the basis of failure to train. Accordingly, Plaintiff's fifth cause of action against Defendant Wolff is dismissed.

I.    Officer Defendants in Their Official Capacity

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. In *Kentucky v. Graham*, the Supreme Court noted that plaintiffs in § 1983 actions "no longer . . . need to bring official-capacity actions against local government officials, …[because] under *Monell*, … local government units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. 159, 167 n.14 (1985). "District courts in this circuit have followed the above reasoning when deciding whether to dismiss claims against official capacity officers when the local government entity is also a named defendant." *Mendez v. Baca*, 11-CV-4771-JHN-PJWx, 2011 WL 13147363, at *3 (C.D. Cal. Oct. 12, 2011).

Here, Plaintiff's opposition does not address this contention that the claims against the Defendant Officers and against the City are redundant. Accordingly, the Court finds the causes of action in the Defendant Officers' official-capacity redundant and dismisses all claims against the Defendant Officers in their official-capacity.

## IV.    CONCLUSION

As explained in greater detail above, the Court **GRANTS** the City of San Diego and Shelley Zimmerman's motion to dismiss **WITHOUT LEAVE TO AMEND**, **GRANTS** in part and **DENIES** in part David Dunhoff's motion to dismiss **WITHOUT LEAVE TO AMEND**, **GRANTS** in part and **DENIES** in part Justin Montoya's motion to dismiss **WITHOUT LEAVE TO AMEND**, **GRANTS** in part and **DENIES** in part J. Johnson's motion to dismiss **WITHOUT LEAVE TO AMEND**, **GRANTS** in part and **DENIES** in part Timothy Coyle's motion to dismiss **WITHOUT LEAVE TO AMEND**, **GRANTS** in part and **DENIES** in part Adam George's motion to dismiss **WITHOUT LEAVE TO AMEND**, and **GRANTS** David Wolff's motion to dismiss **WITHOUT LEAVE TO AMEND**.

Further, the Court summarizes what causes of action remain against which Defendants. The City of San Diego, Shelley Zimmerman, and David Wolff are dismissed from this action. Against David Dunhoff, the second, third, fourth, seventh and eighth causes of action remain. Against Justin Montoya, the second, fourth, seventh and eighth causes of action remain. Against J. Johnson, the first, second, third, and fourth causes of action remain. Against Timothy Coyle, the second, third, and fourth causes of action remain. Against Adam George, the first, second, and fourth causes of action remain.

**IT IS SO ORDERED**.

Dated:  September 23, 2019

Hon. Anthony J. Battaglia
United States District Judge